**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re:

GREGORY S. MORRIS,                    Bankruptcy No. 10-70574-JAD

      Debtor.                         Chapter 11

---

In Re:

HAMPTON INN ALTOONA                   Bankruptcy No. 10-70676-JAD
PENNSYLVANIA, L.P.,
                                      Chapter 11
      Debtor.

---

In Re:

MORRIS MANAGEMENT REAL                Bankruptcy No. 10-70677-JAD
ESTATE, L.P.,
                                      Chapter 11
      Debtor.

---

In Re:

ALTOONA VVB, L.P.,                    Bankruptcy No. 10-70678-JAD

      Debtor.                         Chapter 11

---

In Re:

200 EAST PLANK ROAD, L.P.,            Bankruptcy No. 10-70679-JAD

      Debtor.                         Chapter 11

---

In Re:

TYRONE PCH, L.P.,                     Bankruptcy No. 10-70681-JAD

      Debtor.                         Chapter 11

---

In Re:

MMFRE LIMITED PARTNERSHIP,            Bankruptcy No. 10-70685-JAD

      Debtor.                         Chapter 11

---

In Re:

VENMOR TIPTON PARNTERSHIP,            Bankruptcy No. 10-70686-JAD

      Debtor.                         Chapter 11

**In Re:**

| | |
|---|---|
| **MORRIS MANAGEMENT HARRISBURG, L.P.,** | **Bankruptcy No. 10-70687-JAD** |
| | **Chapter 11** |
| Debtor. | |

**In Re:**

| | |
|---|---|
| **BEDFORD PCH, L.P.,** | **Bankruptcy No. 10-71136-JAD** |
| Debtor. | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **CLEARFIELD PCH, L.P.** | **Bankruptcy No. 10-71137-JAD** |
| Debtor. | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **MMH, L.P.,** | **Bankruptcy No. 10-71138-JAD** |
| Debtor. | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **PHASE TWO 17TH STREET LOGAN TOWNSHIP, L.P.,** | **Bankruptcy No. 10-71139-JAD** |
| | **Chapter 11** |
| Debtor. | |

**In Re:**

| | |
|---|---|
| **VENMOR PARNTERSHIP,** | **Bankruptcy No. 10-71140-JAD** |
| Debtor. | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **VM ASC, LLC,** | **Bankruptcy No. 10-71330-JAD** |
| Debtor. | **Chapter 11** |

## JOINT DISCLOSURE STATEMENT

Debtor Gregory S. Morris ("Morris") commenced a voluntary Chapter 11 Case on May 16, 2010. Morris engages in real estate development and management, primarily in and around Altoona, Pennsylvania. As part of his real estate development and

management activities, Morris formed various business entities related to certain real estate projects. Said business entities were primarily limited partnerships and included various limited partners along with Morris.

Shortly after Morris commenced his Chapter 11 Case, several of the entities he had formed followed suit. On June 9, 2010, Hampton Inn Altoona Pennsylvania, L.P. ("HIAP"), Morris Management Real Estate, L.P. ("MMRE"), Altoona VVB, L.P. ("Altoona VVB"), 200 East Plank Road, L.P. ("200 East Plank") and Tyrone PCH, L.P. ("Tyrone PCH") filed their own Chapter 11 Cases.

On June 10, 2010, MMFRE Limited Partnership ("MMFRE"), VenMor Tipton Partnership ("VenMor Tipton"), and Morris Management Harrisburg, L.P. ("Morris Management Harrisburg") filed their own Chapter 11 Cases.

On September 24, 2010, Bedford PCH, L.P. ("Bedford PCH"), Clearfield PCH, L.P. ("Clearfield PCH"), MMH, L.P. ("MMH"), Phase Two 17th Street Logan Township, L.P. ("Phase Two 17th") and VenMor Partnership filed their own Chapter 11 Case.

Finally, on November 12, 2010, VM ASC, LLC ("VM ASC") filed its own Chapter 11 Case. In actuality, VM ASC is a limited partnership, not an LLC. The designation as originally filed was erroneous and an amendment to the Petition will be filed to reflect the true status of the entity.

The Debtors are seeking to reorganize their financial affairs. Due to the nature of the Plan of Reorganization being submitted herewith, largely common ownership of the various entity Debtors and largely overlapping creditor obligations, a Joint Plan of Reorganization is being proposed, a true and correct copy of which is attached hereto are marked as **Exhibit A**. The purpose of this Joint Disclosure Statement is to enable holders of claims against the Debtors to make an informed judgment concerning

acceptance or rejection of the Joint Plan of Reorganization ("Plan") filed concurrently herewith.

Pursuant to 11 U.S.C. Section 1126(a), the holder of a claim or interest allowed under Section 502 Title 11 may accept or reject a Plan. Under 11 U.S.C. Section 1126(c), a class of claims has accepted a Plan if such Plan has been accepted by creditors that hold at least two-thirds (2/3) of an amount, and more than one-half (1/2) in number, of the allowed claims of such class. Pursuant to 11 U.S.C. Section 1126(f), a class that is not impaired under a Plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the Plan, and solicitation of acceptances with respect of such class from the holders of claims or interests of such class is not required. Pursuant to 11 U.S.C. Section 1126(g), a class is deemed not to have accepted a Plan if such Plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the Plan on account of such claims or interests.

Title 11 U.S.C. Section 1125(b) prohibits solicitation of votes on the Plan until the Disclosure Statement is approved by the Court as having adequate information. The Debtors have attempted to set forth, in reasonable detail, all relevant information concerning the Debtors' assets, liabilities and business operations.

**NO INFORMATION CONCERNING THE DEBTORS IS AUTHORIZED OTHER THAN THE INFORMATION SET FORTH IN THIS STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH ARE OTHER THAN AS CONTAINED IN THIS JOINT DISCLOSURE STATEMENT SHOULD NOT BE RELIED UPON BY YOU IN ARRIVING AT YOUR DECISION.**

# I. BACKGROUND

As is noted above, Morris maintains interests in various entities which own real estate in and around Altoona, Pennsylvania. Certain properties house nationally known tenants such as Hampton Inn, CVS Pharmacy, Cracker Barrel and the like, and generate significant income. Other properties consist of vacant land which is awaiting development but which currently do not produce revenue.

Morris has partners in nearly all of the Debtor entities involved herein with the exceptions being Morris Management Harrisburg, which Morris owns with his spouse, and VM ASC which Morris also owns with his spouse (although there is a claim of co-ownership in VM ASC by the Estate of Joseph Ventura at Adversary Proceeding No. 11-7012-JAD in this Honorable Court).

Although the partnership configurations differ from entity to entity, Morris' primary partners in the various entities were Carroll and Diane Osgood ("the Osgoods") and Joseph Ventura. Morris, as general partner, managed and/or operated the various entities on a day to day basis and oversaw the design, development and construction activities of the various partnership entities as well. The various entities generally were successful and generated significant income to Morris, the Osgoods and Joseph Ventura over a period of approximately fifteen (15) years.

On May 9, 2009, Joseph Ventura passed away. Not long thereafter, relationships between the partners in the various entities began to deteriorate. Morris asserted, and asserts, that various cash call obligations, capital contributions and investment buy-in requirements were ignored by both the Osgoods and Joseph Ventura whose interests were now being administered by the Estate of Joseph B. Ventura ("the Ventura Estate"). This led to a forensic accounting to quantify said obligations which Morris believes to be

in the approximate amount of $2,000,000.00. The results of the forensic accounting are unknown and under the control of the Ventura Estate which has refused to share same. The Ventura Estate has acknowledged, however, that it owes some amount.

At the same time, the Osgoods and the Ventura Estate began making general accusations that Morris, who managed the various entity properties as general partner, had taken improper and excessive distributions for such management activities. Those accusations continue to this day and appear in nearly every pleading which has been filed in these cases by the Osgoods and the Ventura Estate and are mentioned in nearly every hearing and proceeding in these cases in which the Osgoods and the Ventura Estate are involved. Yet still, to date, no specific improper distributions or general partner expense reimbursements or the amount thereof has been cited. Morris wholly denies any impropriety.

As business matters became acrimonious, so did personal relationships amongst the partners. Mrs. Osgood ceased any and all communications with Morris and instructed her husband to so the same. He followed her advice.

This all led to a State Court proceeding in which the Osgoods and the Ventura Estate sought the appointment of a receiver for various entities in which they were partners with Morris. That, in turn, led to Morris seeking Chapter 11 relief along with, ultimately, the various entities referenced above. (There were additional cases filed under Chapter 11 for Altoona Pizza One, Inc. at 10-70680-JAD, Altoona-Beasley Manufacturing, Inc. at 10-71091-JAD and 210 East Plank Road Associates, L.P. at 10-71092-JAD but said cases have since been converted to Chapter 7 Cases).

It is very clear that the Osgoods, the Ventura Estate and Morris will not be able to remain partners and still run the various entities in an effective manner. As such, Morris

is proposing a Joint Plan providing for property swaps, refinancings/assumptions and/or buy outs along with bank guaranty releases which will result in Morris or Morris related entities owning interests in some entities and the Ventura Estate owning interests in others. Any interest retained by Morris will have the Ventura Estate bank guaranties released and any interest retained by the Ventura Estate will have Morris bank guaranties released. If the Ventura Estate cannot, or will not, assume debt or cause the extinguishment of existing guaranties, the Ventura Estate interest will be bought out as provided for in the Plan by Morris or Morris related entities and the guaranties will be extinguished. As to the Osgoods, they will be released from any and all bank guaranties they have provided and receive cash payments over a period of time in exchange for a relinquishment of their interests in the various entities. The Osgoods, Ventura Estate, Morris and the Debtor entities will enter into a mutual release agreement releasing each other from any and all claims they may have against each other.

The primary funding for the Plan will come from a partnership between Morris and Jeff Long, a successful and well known businessman in Altoona, Pennsylvania. Mr. Long started a construction business in 1980 which initially engaged in building residential homes. Over time, Mr. Long's business expanded to involve the construction of larger facilities such as complete housing developments, personal care homes and senior apartment complexes. Now, in addition to his construction business, Mr. Long owns and operates numerous apartment complexes with in excess of 2,000 residents along with other business ventures. Mr. Long will assume the role of general partner in the Morris/Long partnership entities. Mr. Long, and his ability to provide funding for the Plan, is known by both the Osgoods and the Ventura Estate as well as most, if not all, of

the secured creditors in theses various cases.  Mr. Long has already approached most, if not all, of the secured creditors herein and ascertained their willingness to allow him to assume or refinance many of the secured claims in these cases which will be critical to obtaining various guaranty releases which will be necessary to effectuate the Plan.  The responses have been favorable.

The bulk of the unsecured debt in these cases are the claims of the partners themselves which will be released via the Plan.  The remaining unsecured creditors with allowed claims can and will receive payments toward their claims from the entities out of ongoing operations and/or from the remaining partners in said entities after the swaps, buy outs, etc.

<h2 style="text-align:center">II. ASSETS IN THESE ESTATES AND THEIR VALUATION</h2>

## Gregory S. Morris

Mr. Morris, along with his spouse owns a residence which has an approximate fair market value of $375,000.00 but which is subject to mortgages held by CitiMortgage ($161,519.88) and Citibank ($231,686.70).  As the mortgage amounts exceed the value of the residence, there is no equity in same for the benefit of the Estate herein.

Mr. Morris owns, individually, a parcel of real property located at 800 24th Street, Altoona, Pennsylvania which has an approximate fair market value of $2500.00 which is subject to real estate tax liens in the approximate amount of $1200.00.  As such, there is little or no equity for the benefit of Morris' Estate.

Mr. Morris owns personal property, along with his spouse, consisting of a bank account, household furnishings, artwork and a wine collection with an aggregate approximate fair market value of $160,000.00.  Individually, he owns a motorcycle ($1,000.00) memorabilia he has utilized in a restaurant business he ran ($50,000.00),

clothing (100.00), jewelry ($2,000.00), life insurance cash value interests ($2,000.00) as well as his interests in the various Debtor entities which will be described in more detail below. Mr. Morris has interests in other non-debtor business entities as well but same are essentially non-operational and have no market value. Mr. Morris has claimed exemptions in his personal property. There remains some equity for the benefit of creditors of Morris' Estate in said personal property but it is relatively nominal.

**Hampton Inn Altoona Pennsylvania, L.P.**

HIAP owns no real estate although it is an obligor on secured debt owed to S&T Bank in the approximate amount of $10,000,000.00 which is secured by a mortgage upon real property owned by MMRE as described below.

HIAP owns personal property consisting of a checking account with a nominal balance and furniture, fixtures and equipment related to the Hampton Inn Hotel property it operates with an approximate fair market value of $2,000,000.00 which also secures the S&T Bank loan referenced above.

HIAP has, during the course of its case, built up a substantial partnership profit cash reserve of approximately $500,000.00 which would ordinarily be distributed annually to partners since all HIAP debt is being paid on a current basis (with the exception of disputed partner claims) but the Ventura Estate has objected to any such distributions. HIAP has also built up an additional cash reserve, in the approximate amount of $475,000.00 to fund replacements of furniture, fixtures and equipment. This entity is not, and never has been, in default of its obligations. This entity has been managed by Vista Host Hotel Management and they will continue to manage the property under the Plan.

## Morris Management Real Estate, L.P.

MMRE owns real estate located on Charlotte Drive in Altoona, Pennsylvania.  It leases portions of the property to Hampton Inn, Cracker Barrel Restaurant and Champ's Sports Grille. The property has an approximate fair market value of $15,000,000.00 which is subject to a secured claim of S&T Bank in the approximate amount of $10,000,000.00. There is equity in this real estate.

MMRE also owns residential properties located at 315 Irwin Drive, Altoona, Pennsylvania (approximate fair market value of $100,000.00) and 237 Peters Drive, Altoona, Pennsylvania (approximate fair market value of $100,000.00) and a vacant lot also located on Peters Drive (approximate fair market value of $50,000.00).  These properties also secure the $10,000,000.00 claim of S&T Bank.

MMRE's personal property consists of a bank account with an approximate balance of $150, 000.00.

All in all, the S&T loan of approximately $10,000,000.00 is secured by property of MMRE and HIAP which has an approximate fair market value in excess of $17,000,000.00.  This entity is not, and never has been, in default of its obligations.

## Altoona VVB, L.P.

Altoona VVB owns vacant land located at Pleasant Valley Boulevard and 20th Street in Altoona, Pennsylvania.  The property has an approximate fair market value of $650,000.00 which is subject to a mortgage held by First National Bank in the approximate amount of $250,000.00 and real estate taxes of approximately $10,000.00. There is equity in this real estate.

Altoona VVB owns personal property consisting of a checking account with an approximate balance of $3,000.00.

**200 East Plank Road, L.P.**

200 East Plank owns commercial real estate located at 200-208 East Plank Road, Altoona, Pennsylvania. This property has an approximate fair market value of $4,000,000.00 but is subject to mortgages held by S&T Bank in the aggregate approximate amount of $3,000,000.00 and real estate tax liens in the aggregate approximate amount of $160,000.00. There is equity in this property. Portions of this property are leased to CVS Pharmacy and El Campesino restaurant.

200 East Plank's personal property consists of a checking account with an approximate balance of $20,000.00.

**Tyrone PCH, L.P.**

Tyrone PCH owns real property which houses a personal care home at 5546 E. Pleasant Valley Boulevard, Tyrone Pennsylvania. This property has an approximate fair market value of $4,000,000.00. This real estate is secured by a mortgage held by Ameriserv Financial Bank in the approximate amount of $12,000,000.00. Said mortgage is also secured by real properties owned by Bedford PCH and Clearfield PCH which will be described below. The aggregate value of the property securing said claim of Ameriserv Financial Bank has an approximate fair market value of $15,000,000.00 and thus there is equity in said property.

Tyrone PCH owns personal property which includes an operating checking account with an approximate balance of $50,000.00, a money market account which contains funds being held in reserve for furniture, fixtures and equipment and for partner distributions in the approximate amount of $60,000.00, accounts receivable of approximately $100,000.00 and furniture, fixtures and equipment with an approximate fair market value of $50,000.00. The personal property also serves to secure

Ameriserv's claim and thus there is likely no equity in said personal property.  This entity is not, and never has been, in default of its obligations.  This entity has been managed by Jean Klinger, President of Heritage Health Care and she will continue to manage the property under the Plan.

**<u>Bedford PCH, L.P.</u>**

Bedford PCH owns real property which houses a personal care home located at 220 Donahue Manor Road, Bedford, Pennsylvania.  Said real property has an approximate fair market value of $6,000,000.00.  This real estate is secured by a mortgage held by Ameriserv Financial Bank in the approximate amount of $12,000,000.00.  Said mortgage is also secured by real properties owned by Clearfield PCH, which will be described below, and by Tyrone PCH which is described above. The aggregate value of the property securing said claim of Ameriserv Financial Bank had an approximate fair market value of 15,000,000.00 and thus there is equity in said property.

Bedford PCH owns personal property which includes an operating checking account with an approximate balance of $140,000.00, a money market account which contains funds being held in reserve for furniture, fixtures and equipment and for partner distributions in the approximate amount of $350,000.00, accounts receivable of approximately $30,000.00 and furniture, fixtures and equipment with an approximate fair market value of $60,000.00.  The personal property also serves to secure Ameriserv's claim and thus there is likely no equity in said personal property.  This entity is not, and never has been, in default of its obligations. This entity has been managed by Jean Klinger, President of Heritage Health Care and she will continue to manage the property under the Plan.

**Clearfield PCH, L.P.**

Clearfield PCH owns real property which houses a personal case home located at 1300 Leonard Street, Clearfield, Pennsylvania. Said real property has an approximate fair market value of $5,000,000.00. This real estate is secured by a mortgage held by Ameriserv Financial Bank in the approximate amount of $12,000,000.00. Said mortgage is also secured by real properties owned by Bedford PCH and Tyrone PCH as described above. The aggregate value of the property securing said claim of Ameriserv Financial Bank has an approximate fair market value of $15,000,000.00 and thus there is equity in said property.

Clearfield PCH owns personal property which includes an operating checking account with an approximate balance of $140,000.00, a money market account which contains funds being held in reserve for furniture, fixtures and equipment and for partner distributions in the approximate amount of $375,000.00, accounts receivable of approximately $15,000.00 and furniture, fixtures and equipment with an approximate fair market value of $60,000.00. The personal property also serves to secure Ameriserv's claim and thus there is likely no equity in said property. This entity is not, and never has been, in default of its obligations. This entity has been managed by Jean Klinger, President of Heritage Health Care and she will continue to manage the property under the Plan.

**MMFRE Limited Partnership**

MMFRE owns twelve (12) acres of undeveloped real property located at Interstate 99 and Frankstown Road in Altoona, Pennsylvania. The real property has an approximate fair market value of $4,000,000.00. Said real estate is subject to mortgages held by Jersey Shore State Bank in the aggregate approximate amount of

$2,900,000.00 and real estate tax liens of approximately $2,500.00.  Despite the encumbrances, there is equity in MMFRE's real property.

MMFRE's personal property consists of a checking account with a nominal balance.

**VenMor Tipton Partnership**

VenMor Tipton owns thirty-two (32) acres of undeveloped real estate along Interstate 99 near the Tipton-Grazierville exit in Tipton, Pennsylvania.  The real estate has an approximate fair market value of $1,200,000.00.  The real estate is subject to a mortgage held by First National Bank in the approximate amount of $650,000.00 and real estate tax liens in the approximate amount of $1,000.00.  Even with the encumbrances, there is equity in VenMor Tipton's real estate.

VenMor Tipton's personal property consists of a checking account with an approximate balance of $2,000.00.

**VenMor Partnership**

VenMor Partnership owns commercial property located at 1917 E. Pleasant Valley Road, Altoona, Pennsylvania which has an approximate fair market value of $315,000.00.  The real property was a restaurant but was converted into business office space.  The premises are largely vacant though approximately $2,000.00 per month in rental income is generated from the tenants in the building at present.  The real property is subject to a mortgage in favor of First National Bank in the approximate amount of $170,000.00 and real estate tax liens of approximately $2,500.00.  Even with the encumbrances, there is equity in VenMor Partnership's real estate.

VenMor Partnership's personal property consists of a checking account with an approximate balance of $2,000.00.

**Morris Management Harrisburg, L.P.**

Morris Management Harrisburg owns undeveloped real property located at Interstate 83 and Limekiln Road in Harrisburg, Pennsylvania. The real estate has an approximate fair market value of $650,000.00 but is subject to mortgage in favor of County National Bank in the approximate amount of $225,000.00 and real estate tax liens of approximately $12,500.00. Even with the encumbrances on the real estate, Morris Management Harrisburg possesses equity in its real estate.

Morris Management Harrisburg's personal property consists of a checking account with an approximate balance of $500.00.

**MMH, L.P.**

MMH owns no real estate.

MMH's personal property consists of a franchise agreement with Hilton Hotels which is contingent upon the construction of a hotel facility upon the as yet undeveloped real property of MMFRE described above. The value of MMH's franchise rights is unknown but is believed to be of no value unless and until a hotel facility is constructed upon MMFRE's real property.


**Phase Two 17th Street Logan Township, L.P.**

Phase Two 17th owns approximately 150 acres of undeveloped real property located above Logan Town Center in Logan Township, Pennsylvania. The real property has an approximate fair market value of $750,000.00 and is owned free and clear of any liens or encumbrances. As such, there is clearly equity in the real estate of Phase Two 17th.

Phase Two 17th owns no personal property.

**VM ASC, L.P.**

VM ASC owns commercial real property located at 1650 N. Atherton Street in State College, Pennsylvania. The real property has an approximate fair market value of $11,000,000.00. VM ASC leases portions of its real estate to Best Buy and Staples. The real property is subject to a mortgage in favor of Jersey Shore Bank in the approximate amount of $8,500,000.00 and real estate tax liens in the approximate amount of $160,000.00. Even with the liens and encumbrances, VM ASC has equity in its real property.

VM ASC's personal property consists of a checking account with an approximate balance of $12,000.00.

## III. FINANCIAL INFORMATION AND PROJECTION

The Debtors involved in this Joint Disclosure Statement and the Joint Plan of Reorganization being filed concurrently herewith have all filed monthly operating reports throughout their Chapter 11 Cases which detail their financial affairs during the pendency of said Chapter 11 (approximately one year; some cases being filed a little more than one year ago, others being filed a little less than one year ago). Said monthly operating reports have been filed of record with the Court and are available there for review by interested parties.

The monthly operating reports reflect not only past performance but also serve as a guide as to how the Debtors are expected to perform over the next year as well. Such a projection is not particularly relevant to the performance of the Plan which will be predicated primarily upon debt assumptions and/or refinances by Morris' new partner Jeff Long who will assume the role of general partner in the Morris/Long partnership entities. However, the operational projection as contained in the monthly operating

reports filed to date do demonstrate an ability by the Debtor entities to pay the

unsecured claims in the various cases.

Attached hereto as **Exhibit B** are photos of the various parcels of real property

involved in theses Estates.  A summary of the reconfigured property ownership under

the Plan and the means of implementing the Plan are as follows:

## PROPERTY OWNERSHIP PURSUANT TO THE PLAN

### 1) To Morris & Long*

HIAP, L.P.
MMRE, L.P.
Altoona VVB, L.P.
Tyrone PCH, L.P.
Clearfield PCH, L.P.
Bedford PCH, L.P.
VenMor Partnership
VenMor Tipton
Phase Two 17th Street

### 2) To Morris**

Morris Management Harrisburg, L.P.
MMFRE, L.P.
MMH, L.P.
VM ASC, L.P.

### 3) To Ventura Estate***

Altoona-Beasley Manufacturing, Inc.
210 East Plank Road Associates, L.P.
200 East Plank Road, L.P.
Benmor, L.P.

### 4) To Osgoods****

N/A

\*        Morris/Long, in exchange for obtaining the Osgood and Ventura Estate

ownership interests in the listed entities, will refinance or assume debt obligations owed

to S&T Bank, Ameriserv Financial Bank and First National Bank of Pennsylvania.

The Ameriserv loan, which is secured by the assets of Tyrone PCH, Bedford PCH and Clearfield PCH, will be refinanced or assumed in its entirely by Morris/Long.

The S&T Bank loan will be refinanced or assumed in the approximate amount of $10,000,000.00 by Morris/Long to cover the portions of S&T's loans in regard to the HIAP, MMRE and Altoona Pizza One (now in Chapter 7) entities with existing guaranties extinguished. The remaining balance owed to S&T, in the approximate amount of $3,000,000.00 and related to loans in regard to 200 E. Plank Road, is to be assumed by the Ventura Estate under the Plan with the Ventura Estate receiving Morris' 50% ownership interest in 200 E. Plank with existing guaranties extinguished. This would result in the Ventura Estate owning 100% of 200 E. Plank. If, however, the Ventura Estate cannot or will not perform said assumption and guaranty extinguishment, then Morris/Long will refinance or assume said debt as well and pay the Ventura Estate $500,000.00 for its interests in 200 E. Plank. Either way, the claims of S&T Bank will be refinanced or assumed in their entirety. Whichever party ends up with 200 E. Plank, whether the Ventura or Morris/Long, said party will be responsible for the real estate taxes in the approximate amount of $160,000.00.

The First National Bank of Pennsylvania loans will be refinanced or assumed by Morris/Long in the approximate amount of $1,100,000.00 to cover the portions of First National Bank of Pennsylvania loans in regard to the VenMor Partnership, VenMor Tipton and Altoona VVB entities with existing guaranties extinguished. The remaining balance owed to First National Bank of Pennsylvania, in the approximate amount of $261,000.00 and related to a loan to 210 E. Plank (now in Chapter 7) is to be assumed by the Ventura Estate under the Plan with the Ventrua Estate receiving Morris' 33% interest in 210 E. Plank and ABMI with existing guaranties extinguished. This would

result in the Ventura Estate owning two-thirds of 210 E. Plank and ABMI with one-third being owned by Harry Benjamin, the other Partner in these entities. If, however, the Ventura Estate cannot or will not perform said assumption and guaranty extinguishment, then Morris or a Morris entity will refinance or assume said debt and will pay the Ventura Estate $300,000.00 for its interest in 210 E. Plank and Altoona-Beasley Manufacturing, Inc. (both in Chapter 7 Cases).

In all cases, the refinance or assumption of debt must result in an extinguishment of existing guaranties and any assumption and guaranty release must be approved by the particular lender involved.

** Morris (but not Long) will pay the Ventura Estate $150,000.00 to resolve the Ventura Estate's claim of ownership in VM ASC, L.P. in order to avoid the time and expense of litigation. This property is subject to liens and encumbrances in favor of Jersey Shore State Bank in the approximate amount of $8,500,000.00. Morris is the sole guarantor on this portion of the Jersey Shore loans and all payments in regard to this loan are current. Morris will resolve the $8,500,000.00 debt via a sale or refinance of the property. The MMFRE and MMH property is subject to liens and encumbrances in favor of Jersey Shore State Bank in the approximate amount of $2,900,000.00. This portion of the loan is guarantied by Morris and the Osgoods. Long is not interested in acquiring an ownership interest in these entities. As such, Morris or a Morris entity will refinance or assume this Debt and cause the extinguishment of the Osgood guaranties in favor of Jersey Shore State Bank. In the alternative, if Morris cannot achieve a refinance or assumption acceptable to Jersey Shore within 120 days of the Effective Date of the Plan, Morris will cause a sale of the property securing this debt which property is believed to have equity. Upon any sale or refinance of MMFRE/MMH

property, Morris will pay $200,000.00 to the Ventura Estate in exchange for the Ventura Estate's 5% ownership in MMFRE/MMH. Also upon any sale or refinance of MMFRE/MMH property, Morris will cause the Osgood guaranties of MMFRE/MMH Jersey Shore debt to be extinguished in exchange for the Osgoods 20% interest in MMFRE/MMH.

In all cases, the refinance or assumption of debt must result in an extinguishment of existing guaranties and any assumption and guaranty release must be approved by the lender involved.

*** As is noted above, the Ventura Estate shall have the option of assuming debt and getting a release of Morris bank guaranties in order to obtain Morris' ownership interests in Altoona-Beasley, 210 E. Plank and 200 E. Plank. If they cannot or will not assume said debt, then Morris and/or Morris/Long will buy-out the Ventura Estate interests in said entities, assume the Debt thereof and have the Ventura Estate released from any guaranties on said debt.

As to Benmor, L.P. (a non-debtor herein which has Med-Express as a tenant) it owns real property with an approximate fair market value of $2,000,000.00 which is subject to a claim in the approximate amount of $500,000.00 of First National Bank of Pennsylvania secured by a Mortgage and guarantied by Morris. Morris owns 50% of Benmor. Morris will transfer his Benmor interest to the Ventura Estate if the Ventura Estate will assume the First National Bank of Pennsylvania Debt and cause Morris' release as a guarantor. If the Ventura Estate will not assume said debt and extinguish said guaranty, Morris will retain his interests in Benmor subject to the existing guaranty. Unlike with several other entities herein, the Ventura Estate has no ownership interest in Benmor. Thus, if they do not wish to obtain such an interest, there is no need for any

assumption or release of guaranty by Morris or a Morris entity. The loan payments related to the Benmor property are current and would continue to be made if the Ventura Estate elects not to take on said property and it remains with Morris.

****    In addition to the Osgoods being released from all of their guaranties of the debts of the various entities involved herein, Morris/Long will pay the Osgoods a total of $1,000,000.00 by making payments of $100,000.00 per year for a period of ten (10) years, with the first payment occurring on the Plan Effective Date, in exchange for the Osgoods giving up their interests in the various entities. Morris/Long, in addition, will grant the Osgoods a Mortgage upon the real property owned by Phase two 17th in the amount of $200,000.00 and they will be paid that sum upon any refinance or sale of said property.

## GENERAL NOTES REGARDING THE PLAN

1)    The Plan will require the cooperation and agreement of the Trustees in the various cases, including the two (2) Chapter 7 Cases, i.e. 210 E. Plank and Altoona-Beasley;

2)    The Ventura Estate shall state their intentions regarding their election to either take on properties and assume debt as proposed, or opt for the buy outs of their interests as proposed, on or before the Confirmation Date of the Plan.

3)    Long would be involved in the refinancing or assumption of more than $23,000,000.00 of debt with perhaps an additional assumption/refinance of $3,000,000.00 more if the Ventura Estate does not wish to assume/refinance the debt of 200 E. Plank or cannot obtain the requisite guaranty releases.

4)    The debts where Long will not be required to be involved total approximately $3,400,000.00 ($260,000.00 to First National Bank of Pennsylvania if the Ventura

Estate won't assume it, $225,000.00 to County National Bank and $2,900,000.00 to Jersey Shore State Bank). This will require Morris to obtain the refinancing/guaranty releases in regard to these debts. Morris has other interested parties which may partner with him to accomplish same and, even if he does not utilize such a partner, he will have property interests under the Plan to sell or refinance which should enable him to obtain the $3,400,000.00 in financing needed to extinguish such debt and any guaranties related thereto, e.g. Morris Management Harrisburg, MMFRE and VM ASC will be available to serve as collateral for a refinance or for liquidation in order to satisfy said debt. Morris will perform any assumption/refinance within 120 days of the Plan Effective Date. If he cannot achieve a refinance or acceptable assumption within that time frame, he will immediately list the Morris Management Harrisburg, MMFRE and VM ASC properties for sale and will satisfy the debt obligations/guaranties out of proceeds from the sale of said properties.

5) The Plan eliminates extensive litigation due to the mutual releases by and between Morris, the Ventura Estate, the Osgoods and the various Debtor entities.

6) The Plan is comprehensive in nature in that it seeks to resolve all of the claims in all of the cases. This contrasts with the Plan submitted previously by the Ventura Estate and the Osgoods which sought to cherry pick some highly profitable entities (HIAP, MMRE and the three personal care home entities). It also contrasts with contentions from the Ventura Estate and the Osgoods regarding an intention to purchase said profitable entities in lieu of a Plan. With the most attractive properties stripped out of the process, a party like Mr. Long loses

interest, leaving unpaid debts and outstanding guaranties of millions of dollars in some of the other cases.

## IV. CLAIMS IN THIS ESTATE

## A. Unimpaired Claims

## Secured Claims

**Secured Class 1:**   This class includes the claims of S&T Bank in the approximate aggregate amount of $13,000,000.00 which are secured by Mortgages upon the real property and security interests in the personal property owned by HIAP, MMRE and 200 E. Plank.

**Secured Class 2:**   This class includes the claims of First National Bank of Pennsylvania in the approximate aggregate amount of $1,350,000.00 which are secured by Mortgages upon the real property and security interests in the personal property owned by Altoona VVB, VenMor Tipton and VenMor Partnership.

**Secured Class 3:**   This class includes the claims of Ameriserv Finance Bank in the approximate aggregate amount of $12,000,000.00 which are secured by Mortgages upon the real property and security interests in the personal property owned by Bedford PCH, Clearfield PCH and Tyrone PCH.

**Secured Class 4:**   This class includes the claims of Jersey Shore State Bank which are in the approximate aggregate amount of $11,400,000.00 which are secured by a Mortgage upon the real property and security interests in the personal property owned by MMFRE, MMH and VM ASC.

**Secured Class 5:**   This class includes the claim of County National Bank in the approximate amount of $225,000.00 which is secured by a Mortgage upon the real property owned by Morris Management Harrisburg.

**Secured Class 6:**   This class includes the claim of Citi Mortgage in the approximate amount of $160,000.00 which is secured by a first Mortgage upon Morris' residence.

**Secured Class 7:**   This class includes the claim of Citibank in the approximate amount of $230,000.00 which is secured by a second Mortgage upon Morris' residence.

**Secured Class 8:**   This class includes the claims of various governmental bodies possessing tax liens upon real estate owned by the Debtors involved in this Joint Disclosure Statement and the Joint Plan of Reorganization being filed herewith as follows:

a)   Blair County Tax Claim Bureau in the amount of $1105.60 (Gregory Morris);

b)   Altoona Area School District in the amount of $400.00 (Gregory Morris);

c)   City of Altoona in the amount of $400.00 (Gregory Morris);

d)   Blair County Tax Claim Bureau in the amount of $5049.16 (Altoona VVB);

e)   Blair County Tax Claim Bureau in the amount of $59,029.48 (200 East Plank);

f)   Altoona Area School District in the amount of $39,146.16 (200 East Plank);

g)   Central Tax Bureau of Pennsylvania in the amount of $62,821.26 (200 East Plank);

h)   Borough of Tyrone in the amount of $1022.21 (Tyrone PCH);

i)   Blair County Tax Claim Bureau in the amount of $1817.28 (MMFRE);

j)   Blair County Tax Claim Bureau in the amount of $789.10 (VenMor Tipton);

k)   Patricia A. Gordon, Tax Collector in the amount of $5,341.28 (Morris Management Harrisburg);

l) Rose Barefoot, Tax Collector in the amount of $33,000.00 (Bedford PCH);

m) Kelly McCrolsen, Tax Collector in the amount of $29,000.00 (Clearfield PCH);

n) Susan E. Kensinger, Tax Collector in the amount of $2,400.00 (VenMor Partnership);

o) Centre County Tax Claim Bureau in the amount of $92,015.43 (VM ASC); and

p) Ferguson Township Tax Office in the amount of $76,952.99 (VM ASC).

## Administrative Claims

**Administrative Class 9:**   This class includes the claims for fees and expenses of Counsel for Morris which are in the approximate amount of $280,000.00.  This amount does not include fees and expenses incurred by this claimant through the finalization of the various Chapter 11 Cases involved herein.

**Administrative Class 10:** This class includes the claims for fees and expenses of the Accountant for the various Debtors involved herein, Randy Tarpey of Sickler & Associates, in an amount to be determined.

**Administrative Class 11:** This class includes the claims for fees and expenses of the Chapter 11 Trustees in these various Chapter 11 Cases and their counsel in said cases. The amounts of these claims are to be determined.

**Administrative Class 12:** This class includes the claims of the Office of the U.S. Trustee for quarterly fees through the entry of a final decree in these cases.

## Priority Claims

There are no priority claims in theses Estates.

## B. Impaired Claims

### General Unsecured Creditors

**Unsecured Class 13:** This class includes the claims of the Ventura Estate, the Osgoods and Morris against each other and the various Debtor entities and any claims of the Debtor entities against each other. The Ventura Estate has filed proofs of claim in the aggregate amount of $9,025,000.00 all of which are estimated, undocumented and disputed. The Morris claims total $3,181,402.59 plus approximately $2,000,000.00 in unpaid cash calls, investments requirements, etc. The Osgood claims are unspecified, undocumented, false and disputed. Tyrone PCH owes $1,320,000.00 to Bedford PCH and $75,000.00 to Clearfield PCH. Clearfield PCH owes $280,000.00 to Bedford PCH.

**Unsecured Class 14:** This class includes the non-dischargeable claims of Trump Plaza Associates, Trump Marina Hotel Casino and Marina District Development Company in the aggregate amount of $231,296.30.

**Unsecured Class 15:** This class includes the claims of the general unsecured creditors in the amount of $3,233,739.00. Of that amount, $1,537,699.00 is disputed.

## V. LITIGATION IN THESES ESTATES

The Ventura Estate has commenced an Adversary Proceeding in the VM ASC Estate at Case No. 11-7012-JAD in which it asserts an ownership interest in VM ASC which assertion is disputed by Morris.

Although there is no other litigation pending at present, there is potential for substantial litigation amongst Morris, the Ventura Estate and the Osgoods. Morris has claims against the Osgoods and the Ventura Estate for unpaid cash calls, investment requirements, agreement breaches and the like. Morris has claims regarding the standing of the Ventura Estate and their status as partner in various entities due to the

Ventura Estate's failure to take steps provided for in the partnership agreements regarding the preservation of partner status upon the death of a partner. Morris has objections to the claims asserted by the Ventura Estate and the Osgoods against him and the various entities involved herein. Morris has claims against the Ventura Estate and the Osgoods for defamation and in regard to their disruption of his business affairs and the business affairs of entities in which he holds an ownership interest.

The Ventura Estate and the Osgoods have repeatedly accused Mr. Morris of improprieties in his managing of the various entities involved herein. Since no specific impropriety has ever been cited, it is presumed that said parties would need to litigate in order to establish and quantify their alleged claims.

All of the foregoing litigation would be eliminated under the proposed Joint Plan being filed herewith.

There may be objections to various unsecured claims to be filed unrelated to foregoing disputes between the Ventura Estate, the Osgoods and Morris.

## VI. TAX CONSEQUENCES OF THE PLAN

Morris is not aware of any tax consequences which will arise as a result of the Plan and does not believe there are any such consequences. Any party concerned with any tax consequences, however, should consult with a tax specialist.

## VII. LIQUIDATION ANALYSIS

As is set forth more specifically above, the Debtors own real estate which has significant value but which is subject to significant encumbrances. Some real estate holdings have equity while others do not. In the aggregate, the real estate is believed to have equity but much depends upon market conditions and the manner of any liquidation.

Several of the Debtors operate as going concerns quite well while others are non-operational and hold real estate but generate no income.

The value of the various Debtors' personalty is relatively nominal and is, for the most part, encumbered in any event.

It is believed that a flat out Chapter 7 liquidation would result in nominal or no distributions to the majority of creditors in these Estates and that the best way to achieve maximum payments to creditors is to eliminate the partnership disputes that have been hampering operations of the various business entities and to then continue business operations. Factors to consider in a Chapter 7 liquidation are as follows:

## A.  TRUSTEE'S EXPENSES

If these Cases were to be converted to Chapter 7 Cases, a Trustee would be appointed by the Bankruptcy Court to administer the liquidation, if any, of the Estates. In all probability, the Trustee would treat these Cases as asset cases as set forth above. If in fact the Trustee did treat these cases as asset Cases, the Trustee would, in all likelihood, engage legal counsel that would be paid as a Chapter 7 administrative claim. Pursuant to 11 U. S. C. Section 326, the Trustee's fees are based on a sliding scale calculated upon all monies collected, including amounts collected by the Trustee. Accordingly, the Trustee's compensation would be calculated against the gross assets of the Debtors. Compensation of the Trustee's legal counsel would also be established by the Court upon application of the Trustee's counsel and then, upon such approval, said fees would also be deducted from the gross assets of the Debtors.

## B.  OTHER EXPENSES

Other expenses must also be considered in a Chapter 7 liquidation.  A Trustee would have to sell the property of the Estates in order to realize the funds discussed

earlier so that the various creditors in these Estates could be paid. The Trustee typically would hire an auctioneer and the auctioneer's fee would be paid as an administrative expense before any distribution to unsecured creditors. There would also be advertising and other expenses of the sale. It is conservatively estimated that at least ten (10%) of the value of the property would be lost just to pay the administration of a sale. In addition, there are other variables to consider in estimating funds which would be available for distribution to unsecured creditors upon liquidation. It is likely that the fair market value assigned to individual assets by the Debtors may prove high in light of the "liquidation" type sale which is typical in a Chapter 7 case. Consideration must also be given to the time it would take to liquidate these assets and create a fund for distribution. It typically takes a long time to liquidate an estate. The costs associated with the preservation of the assets while awaiting sale are considered administrative expenses and require priority over unsecured claims. These costs would further reduce any potential funds available for unsecured claimants. All of these factors should be considered when voting for or against the Debtors' Joint Plan of Reorganization.

## C. DISTRIBUTION ANALYSIS

In a forced liquidation, and as a result of it, it is anticipated that very little, if any, funds would remain to pay claimants in this these Estates other than secured creditors and even they could possibly receive less than the full amount of their claims.

Respectfully Submitted,

*/s/ Robert O Lampl*
ROBERT O LAMPL
PA I.D. #19809
JOHN P. LACHER
PA I.D. #62297
DAVID L. FUCHS
PA I.D. #205694
Counsel for the Debtors
960 Penn Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

In Re:

| | |
|---|---|
| GREGORY S. MORRIS, | Bankruptcy No. 10-70574-JAD |
| Debtor. | Chapter 11 |

In Re:

| | |
|---|---|
| HAMPTON INN ALTOONA PENNSYLVANIA, L.P., | Bankruptcy No. 10-70676-JAD |
| | Chapter 11 |
| Debtor. | |

In Re:

| | |
|---|---|
| MORRIS MANAGEMENT REAL ESTATE, L.P., | Bankruptcy No. 10-70677-JAD |
| | Chapter 11 |
| Debtor. | |

In Re:

| | |
|---|---|
| ALTOONA VVB, L.P., | Bankruptcy No. 10-70678-JAD |
| Debtor. | Chapter 11 |

In Re:

| | |
|---|---|
| 200 EAST PLANK ROAD, L.P., | Bankruptcy No. 10-70679-JAD |
| Debtor. | Chapter 11 |

In Re:

| | |
|---|---|
| TYRONE PCH, L.P., | Bankruptcy No. 10-70681-JAD |
| Debtor. | Chapter 11 |

In Re:

| | |
|---|---|
| MMFRE LIMITED PARTNERSHIP, | Bankruptcy No. 10-70685-JAD |
| Debtor. | Chapter 11 |

In Re:

| | |
|---|---|
| VENMOR TIPTON PARNTERSHIP, | Bankruptcy No. 10-70686-JAD |
| Debtor. | Chapter 11 |

**In Re:**

| | |
|---|---|
| **MORRIS MANAGEMENT HARRISBURG, L.P.,** | **Bankruptcy No. 10-70687-JAD** |
| | **Chapter 11** |
| **Debtor.** | |

**In Re:**

| | |
|---|---|
| **BEDFORD PCH, L.P.,** | **Bankruptcy No. 10-71136-JAD** |
| **Debtor.** | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **CLEARFIELD PCH, L.P.** | **Bankruptcy No. 10-71137-JAD** |
| **Debtor.** | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **MMH, L.P.,** | **Bankruptcy No. 10-71138-JAD** |
| **Debtor.** | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **PHASE TWO 17TH STREET LOGAN TOWNSHIP, L.P.,** | **Bankruptcy No. 10-71139-JAD** |
| | **Chapter 11** |
| **Debtor.** | |

**In Re:**

| | |
|---|---|
| **VENMOR PARNTERSHIP,** | **Bankruptcy No. 10-71140-JAD** |
| **Debtor.** | **Chapter 11** |

**In Re:**

| | |
|---|---|
| **VM ASC, LLC,** | **Bankruptcy No. 10-71330-JAD** |
| **Debtor.** | **Chapter 11** |

## CERTIFICATE OF SERVICE

Robert O Lampl, John P. Lacher and David L. Fuchs, hereby certify, that on the 12th day of September, 2011, a true and correct copy of the foregoing **JOINT DISCLOSURE STATEMENT** was served upon the following *(via electronic service)*:

Office of the U.S. Trustee
970 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222

Robert H. Slone
223 South Maple Avenue
Greensburg, PA 15601

Lisa M. Swope
219 South Center Street
P.O. Box 270
Ebensburg, PA 15931

/s/ Robert O Lampl_____
ROBERT O LAMPL
PA I.D. #19809
JOHN P. LACHER
PA I.D. #62297
DAVID L. FUCHS
PA I.D. #205694
Counsel for the Debtors
960 Penn Avenue, Suite 1200
Pittsburgh, PA 15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)