IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-70574 |
| | Ch. 11 |
| GREGORY S. MORRIS | Related to Document No. 267 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70676 |
| | Ch. 11 |
| HAMPTON INN ALTONA | Related to Document No. 230 |
| PENNSYLVANIA, L.P | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70677 |
| | Ch. 11 |
| MORRIS MANAGEMENT | Related to Document No. 218 |
| REAL ESTATE, L.P. | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70678 |
| | Ch. 11 |
| ALTOONA VVB, L.P. | Related to Document No. 142 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70679 |
| | Ch. 11 |
| 200 EAST PLANK ROAD | Related to Document No. 192 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70681 |
| | Ch. 11 |
| TYRONE PCH, L.P. | Related to Document No. 185 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |
| | |
| IN RE: | Bankruptcy Case No. 10-70685 |
| | Ch. 11 |
| MMFRE LIMITED PARTNERSHIP | Related to Document No. 136 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-70686 |
| | Ch. 11 |
| VENMORE TIPTON PARTNERSHIP | Related to Document No. 131 |
| | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-70687 |
| | Ch. 11 |
| MORRIS MANAGEMENT | Related to Document No. 110 |
| HARRISBURG, L.P. | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-71136 |
| | Ch. 11 |
| BEDFORD PCH, L.P. | Related to Document No. 99 |
| | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-71137 |
| | Ch. 11 |
| CLEARFIELD PCH, L.P. | Related to Document No. 107 |
| | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-71138 |
| | Ch. 11 |
| MMH, L.P. | Related to Document No. 58 |
| | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-71139 |
| | Ch. 11 |
| PHASE TWO 17TH STREET | Related to Document No. 60 |
| LOGAN TOWNSHIP, L.P. | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |
| IN RE: | Bankruptcy Case No. 10-71140 |
| | Ch. 11 |
| VENMOR PARTNERSHIP | Related to Document No. 86 |
| | Hearing Date & Time: |
|     Debtor. | October 27, 2011 at 10:00 a.m. |

| | |
|---|---|
| IN RE: | Bankruptcy Case No. 10-71330 |
| | Ch. 11 |
| VM ASC, LLC | Related to Document No. 88 |
| | Hearing Date & Time: |
| Debtor. | October 27, 2011 at 10:00 a.m. |

## OBJECTIONS OF THE ESTATE OF JOSEPH VENTURA TO THE JOINT DISCLOSURE STATEMENT FILED BY GREGORY S. MORRIS

AND NOW comes the Estate of Joseph Ventura, by and through its counsel, Pietragallo Gordon Alfano Bosick & Raspanti and files these Objections to the Joint Disclosure Statement filed by Gregory S. Morris and in support thereof avers as follows:

1. Gregory S. Morris ("Morris"), the plan proponent, filed the above referenced chapter 11 bankruptcy on or about May 16, 2010.

2. Hampton Inn Altoona Pennsylvania, L.P. ("HIAP") filed the above referenced chapter 11 bankruptcy on or about June 9, 2011.

3. Morris Management Real Estate filed the above referenced chapter 11 bankruptcy on or about June 9, 2010.

4. Altoona VVB, L.P. filed the above referenced chapter 11 bankruptcy on or about June 9, 2010.

5. 200 East Plank Road filed the above referenced chapter 11 bankruptcy on or about June 9, 2010.

6. Tyrone PCH, L.P. ("Tyrone") filed the above referenced chapter 11 bankruptcy on or about June 9, 2010.

7. MMFRE Limited Partnership filed the above referenced chapter 11 bankruptcy on or about June 10, 2010.

8. Venmor Tipton Partnership filed the above referenced chapter 11 bankruptcy on or about June 10, 2010.

9. Morris Management Harrisburg filed the above referenced chapter 11 bankruptcy on or about June 10, 2010.

10. Bedford PCH, L.P. ("Bedford") filed the above referenced chapter 11 bankruptcy on or about September 24, 2010.

11. Clearfield PCH, L.P. ("Clearfield") filed the above referenced chapter 11 bankruptcy on or about September 24, 2010.

12. MMH, L.P. filed the above referenced chapter 11 bankruptcy on or about September 24, 2010.

13. Phase Two 17th Street Logan Township, L.P. filed the above referenced chapter 11 bankruptcy on or about September 24, 2010.

14. Venmor Partnership filed the above referenced chapter 11 bankruptcy on or about September 24, 2010.

15. VM ASC, LLC filed the above referenced chapter 11 bankruptcy on or about November 12, 2010.

16. Robert Slone was appointed as the Chapter 11 Trustee in Hampton Inn Altoona Pennsylvania, L.P., Morris Management Real Estate, L.P., Altoona VVB, L.P., 200 East Plank Road, L.P., Tyrone PCH, L.P., MMFRE Limited Partnership, Venmor Tipton Partnership, Morris Management Harrisburg, L.P., MMH L.P., Phase Two 17th Street Logan Township, L.P. and Venmor Partnership.

17. Lisa Swope was appointed as the Chapter 11 Trustee in Bedford PCH, Clearfield PCH and VM ASC, LLC.

18. The Estate of Joseph Ventura is comprised of beneficiaries of the deceased Joseph Ventura. Joseph Ventura had several business ventures with Gregory Morris.

19. Joseph Ventura, now the Estate of Joseph Ventura, is a guarantor on several of the bank loans addressed in Mr. Morris' Disclosure Statement and Plan.

20. Mr. Morris' Disclosure Statement and Plan was filed some eighteen (18) months after Mr. Morris initially filed for protection under chapter 11 of the United States Bankruptcy Code; said Plan is neither feasible nor confirmable.

21. Mr. Morris' Plan and Disclosure Statement contemplate that Morris and Jeff Long will buy out the ownership interest of the Ventura Estate, Carroll Osgood and Diane Osgood and will thereafter "refinance or assume" debt obligations owed.

22. Mr. Morris' Plan and Disclosure Statement provide that the "refinance or assumption" must result in an extinguishment of all existing guaranties, which must be approved by the lenders involved.

23. Mr. Morris' Plan is predicated on three assumptions, as disclosed by Mr. Morris himself on pages 6 and 7 of his Disclosure Statement: 1. Certain creditors agree to release their claims against the Debtor; 2. Certain owners, including the Estate of Joseph Ventura, must agree to transfer their interests in several of the entities to a "to be formed" entity, controlled by Morris and an investor at prices dictated by Morris with no competitive bidding; and, 3. The various creditors who hold personal guarantees of Joseph Ventura and others, agree to release the guarantees and allow the "to be formed" entity to assume the existing debt.

24. AmeriServ Financial Bank ("AmeriServ") is a secured creditor in connection with the Tyrone, Bedford and Clearfield cases relative to two loans in the principal amounts of $12,282,000.00 ("Loan 1") and $1,000,000.00 ("Loan 2") (Loan 1 and Loan 2 are collectively referred to as the "Loans").

25. Said Loans are secured by real and personal property owned by Bedford, Clearfield and Tyrone.

26. With regard to Loan 1, Bedford, Clearfield and Tyrone are the borrowers with the Estate of Joseph B. Ventura, Carroll Osgood, Diane Osgood and Morris acting as guarantors in connection with said loan.

27. Regarding Loan 2, Carroll Osgood, Diane Osgood and Morris are borrowers with no guarantors.

28. The payoff on Loan 1, including interest and attorneys' fees as of July 15, 2011 is $11,461,282.40.

29. The payoff on Loan 2, including interest and attorneys' fees as of July 15, 2011 is $485,477.93.

30. AmeriServ has objected to Mr. Morris' Plan and Disclosure Statement on the basis that it fails to provide adequate information in sufficient detail to allow interested parties to make an informed judgment on the Plan as required under 11 U.S.C. § 1125(a)(1).

31. The Morris Plan and Disclosure Statement fail to provide adequate information in sufficient detail to allow interested parties to make an informed decision as required under 11 U.S.C. § 1125(a)(1) and is flawed based upon the following:

    a. There is no legal basis pursuant to which Morris could force the Estate of Joseph Ventura to release its claims against him. The Estate of Joseph Ventura will not consent to release its claims against Mr. Morris; the Plan is therefore not confirmable.

b. There is no legal basis pursuant to which Morris could force the Estate of Joseph Ventura to transfer its ownership interests in the various entities to Mr. Morris, or his yet to be formed entity, at a price and time established by Morris with no opportunity for a competitive bidding process. The Estate of Joseph Ventura will not consent to such a transfer.

c. There is no legal basis pursuant to which Morris could force creditors holding personal guarantees of non-debtors to release non-debtor guarantors from personally guaranteed obligations and to agree to allow Morris or his yet to be formed entity to assume said existing debt.

d. In fact, AmeriServ, the creditor with regard to the Bedford, Clearfield and Tyrone loans has confirmed that it will not consent to such an arrangement.

e. Morris' Plan and Disclosure Statement fails to set forth how Morris and Long will effectuate a buy-out of the Ventura/Osgood ownership interest and whether a new entity will exist or be formed in order to accomplish such a buy-out. As was previously indicated, The Estate of Joseph Ventura will not consent to a buy-out and there is no legal way to force such a buy-out.

f. No financial information has been set forth regarding a new company. No financial statements or projections are included. No details as to the assets or capitalization of a new company is set forth. With the new company and/or Morris and Long proposing an assumption of substantial debt and the payment of a substantial amount of money to resolve certain the claims against the Debtor, it is incumbent upon the new company and/or Morris and Long to demonstrate an ability to take on such obligations.

g. The Morris Disclosure Statement provides that Mr. Long's ability to provide funding for the Morris Plan is well known by most, if not all of the secured creditors. In its objections, AmeriServ confirms that it does not know if Mr. Long has the wherewithal to provide funding for the Morris Plan.

h. The Morris Disclosure Statement provides that Mr. Long has approached most, if not all, of the secured creditors and ascertained their willingness to allow him to assume or refinance the secured claims. AmeriServ, in its objections, confirms that it has not indicated a willingness to allow Mr. Long to assume the obligations associated with the Loans and is <u>unlikely to consent to the same, based upon the terms contained in the Morris Plan, which include a release of all existing borrowers/ guarantors on the Loans, including Ventura/Osgood.</u>

i. Mr. Morris' Plan is vague and unclear in that it fails to state whether Morris and Long intend to assume or refinance the existing Loans. The Disclosure Statement uses "assume or refinance" when describing the treatment of loans. AmeriServ, one of the primary banks involved, will not consent to such an assumption based upon the terms set forth in the Morris Plan.

j. The valuations set forth in the Morris Plan are approximate and no basis is set forth for said valuations.

k. Mr. Morris' Plan fails to state if Morris and Long intend on assuming or otherwise paying post-petition interest, fees, late charges or attorneys' fees in accordance with Section 506(b) of Title 11 of the United States Code.

l. Mr. Morris' plan fails to disclose the percentage of ownership of Long and Mr. Morris.

  m. Mr. Morris' plan fails to provide a liquidation analysis.

  n. Mr. Morris' Plan makes reference that the Estate of Joseph Ventura admits it owes money to Mr. Morris. This is not an accurate statement. The reality is that the estate agreed to make capital contributions to those entities that were in need of it due to operational loses, not Mr. Morris helping himself to reimbursements and the like, and those contributions would be to the entities not Mr. Morris individually. These contributions were conditioned upon Mr. Morris himself making his fair share of contributions.

32. Morris' Plan violates Section 524(e) Title 11 of the United States Code in that this Court lacks jurisdiction to release the co-borrowers and/ or guarantors from their obligations under the terms of the loans, as the individuals being released are not debtors in the instant bankruptcies. Simply by filing a Plan, Mr. Morris cannot release any liability for any co-borrower or guarantor in connection with the loans.

33. AmeriServ stated in its objections to the Disclosure Statement, filed at document #276 in Gregory Morris' bankruptcy, "The Bank is unlikely to grant its consent, which consent is required under the terms of the loan documentation executed in connection with the Loans, to have any third party assume the obligations of the Loans."

34. Mr. Morris' monthly operating reports indicate that during the entire pendency of the bankruptcy action, he has had $327.00 cash on hand. His Plan calls for him to pay his bankruptcy counsel's fees and expenses on the Effective Date, defined as "ninety (90) days after the Confirmation Date."

35. Morris' counsel has filed a fee application, requesting fees in the amount of $259,715.00 and costs in the amount of $22,594.49, for the period 5/13/2010 through 7/29/2011.

36. In his Plan, Morris states that he will personally pay the Ventura Estate $150,000.00 in exchange for a release of any ownership interest it may have in VM ASC, LP.

37. Not only is it questionable as to how Mr. Morris has funds in the approximate amount of $450,000.00 to pay said amounts provided for in his Plan, but the Estate will not consent to $150,000.00 in exchange for its ownership interest in VM ASC.

38. Diane and Carroll Osgood filed objections to Mr. Morris' Plan and Disclosure Statement on or about October 4, 2011.

39. Ameriserv filed objections to Mr. Morris' Plan and Disclosure Statement on or about September 23, 2011.

40. Based upon the foregoing, it is submitted that Mr. Morris' Plan is neither feasible nor confirmable as written.

41. The Estate of Joseph Ventura reserves its right to file supplemental objections to the Disclosure Statement and Plan.

42. It is respectfully requested that this Honorable Court deny approval of the Disclosure Statement.

WHEREFORE, the Estate of Joseph Ventura respectfully requests that this Honorable Court deny approval of the Morris Disclosure Statement.

                                        Respectfully submitted,

                                        PIETRAGALLO GORDON ALFANO BOSICK
                                            & RASPANTI, LLP

By:   */s/ Holly E. DiCesare*
        Richard J. Parks, Esquire
        Pa. I.D. NO. 40477
        Holly E. DiCesare, Esquire
        Pa I.D. NO. 209094
        HED@Pietragallo.com
        38th Floor, One Oxford Centre
        Pittsburgh, PA 15219
        (412) 263-2000
        *Counsel for Estate of Ventura*